417-0737, ABF Freight. Counsel, you may proceed. Good morning, Justices. Good morning. Good morning, Counsel. May it please the Court. My name is Tim O'Gorman. I'm here for ABF Freight in this appeal. I'd like to think that we were scheduled for the very last argument of the entire calendar because this is absolutely insane. This case is nuts. I wish that the five of us, I'll say six, Justice Hudson, you would have been invited as well when you hear this, to be on a conference call when this came from the Commission where I tried to explain to my client exactly what the Commission was doing. Can you speak up just a little bit? We're having a little bit of a hard time hearing you. Certainly. I apologize, Your Honor. We have a case... Yell it out. I will. I'll be enthusiastic. Okay. We have a case where we have a finger tendon injury in the right hand. The claimant was eventually recommended for a finger fusion. The curveball is that this particular claimant has a claustrophobic condition. An agoraphobia, I believe, is what his psychologist referred it to. A finger fusion isn't really possible because issues would arise where he would try and break the fusion. That's really a non-starter from a treatment perspective. Eventually, he was released to MMI. He was given a 20-pound lifting restriction, which precluded him from going back to work with the respondent. We do have a Section 12 expert who says he is capable of full-duty work, so there is a dispute as to whether or not he actually requires this 20-pound restriction. That's Vender? Dr. Vender. That's Vender. Okay. And so we have the psychologist also testifying, stating that he cannot have this finger fusion. So what does ABF do? At the direction of his treating surgeon, we have an orthotic, a splint, casted to his hand that he's able to take off when the anxiety starts to get to be too much. So it simulates a finger fusion, which should presumably allow him to work full duty. However, it doesn't stick the finger permanently, so he can take it off when he wants to take it off. We have a situation here where the claimant is refusing to do so in his attempts to go back to work. So there's two specific issues. Well, is there not some argument here that the splint itself is not 100 percent analogous to a fusion, is it? I thought one of the FCEs that after doing simulated work activities, the hand would swell, et cetera, and the surgeon said with a fusion that would not occur. That's correct, Your Honor. However, the FCEs that you're referring to were not conducted with the splint on. The FCE that he was performing was done without the splint, so naturally I'm sure the finger was swelling and painful.  The issue of whether or not he can actually return back to work. So the FCEs on that basis, as one of the doctors said, is useless. Well, I would say two of the FCEs are useless, Your Honor, because the one, the initial FCE, was found to be invalid. Right, but if you're just telling me that the FCEs were conducted without the use of the orthotic splint, then why is any one of them useful? Well, in this particular case, I would agree with you. That's correct. And to that end, the FCE is unnecessary because he can go back to work full duty. And that's demonstrated by the record. Who said that? Dr. Vendor, the Section 12 expert, and Dr. Cobb, his treating surgeon, advised that the claimant would be capable of returning to work at a greater restriction than what was showed in the FCE. His psychologist, the third doctor, recommended that he try and return to work in a full duty capacity while wearing the splint. So we have three doctors that call into question the restrictions that are provided for in this case. Well, there are no restrictions by any of the medical doctors to full duty return to work. I'm sorry, there are no? Is that your question? If we take out the FCEs, the evaluations, there are no restrictions by any of the medical doctors, Section 12 included, that said he is not capable of returning to full time employment. Is that correct? I believe that's correct. I think you're using, yeah, that's correct. You're using a double negative, Your Honor. I'm sorry, I was trying to follow. I understand. And that is what our contention would be, yes. There is no restriction, there's no lifting restriction outlined by any doctor if the splint were to be utilized. Every restriction was born out of an understanding that the claimant was not using the splint. Well, is there any testimony to rebut the testimony of Dr. Cobb? Well, let's see, Dr. Cobb indicated that because the claimant's psychological condition, the finger could not be fused, right? That's correct, Your Honor. And in that case, he had to wear the splint. The splint would serve the same purpose as the fusion. But there were occasions then that he could not wear the splint simply because of the agoraphobia that you were referring to, right? It's correct. I don't know if I would go so far as to say that there are specific occasions. I think a more accurate way to say that is the claimant would be capable of taking the splint off when the anxiety grew to be too high. Well, would he be able to work unrestricted without the splint on those occasions? So, yes. Respondent's contention is yes, despite the fact. Who said that? Did Dr. Bender say that? Dr. Bender said this, yes. Dr. Bender said that he would have lifting restrictions when he didn't have the splint on. Dr. Bender's testimony, if I understand. I'm just going off of the arbitrator's decision, but this is a quote from Dr. Bender. So, the main problem with his hand is that he doesn't have the same function with the index finger. So, that would limit his lifting somewhat with that hand. It would be limited less if he was able to use a protective splint. So, he would have some limitations without a splint. So, and I guess the way that I would read that is there may be some limitations. Naturally, there would be some functional deficit in the tendon in his finger. However, it would not be so great that it would preclude him from returning to work in a full-duty capacity. Well, who said that? Dr. Bender's testimony is that he could return to work in a full-duty capacity. I mean, the arbitrator specifically noted this testimony when he was going through his boat rehab analysis, right? That's correct. And you're saying that the manifest weight of the evidence is against that particular finding of the arbitrator? That is our position, yes. What I'm saying is that the arbitrator's selection of the quote in this particular instance speaks generally to the function in the right finger. However, it doesn't speak specifically to whether or not the claimant could go back to work. Well, it seems that you want your conclusion to be based on Dr. Bender's statement, which appears to be an inconsistent conclusion with what he's saying. I don't know if it's as inconsistent as – I don't believe they're directly inapposite. The doctor is saying that there would be some functional limitation, yes. But the doctor is also saying that this functional limitation would not preclude him from returning to work. He could still lift enough to go back to work. And in those cases, if there is some functional limitation due to pain, but he's still capable of returning to work, this is what permanent partial disability is for, specifically. It's to compensate whatever permanent partial disability might be left in the finger. And that's what we would ask the court in this case is to remand this case back to the arbitrator for those findings. So I believe that would be our characterization of what Dr. Bender is saying in this case. So if it's okay, I'll move on to the second issue, which the arbitrator actually did not address at all. I understand that we're still dealing with a manifest way to the evidence, even though he did not address 19D of the act. There's no mention of 19D in the arbitrator's decision. However, it is a dispute. It doesn't necessarily go to the issue on a de novo basis, if that makes sense. I think I might be confusing myself. 19D is? 19D is the – we call it, quote, unquote, the injurious practices act. It states that if a claimant refuses to undergo reasonable medical procedures or rehabilitative services – You're not going to say that his refusal to have a splint in the face of his emotional difficulties is an injurious practice, are you? I think that the standard is a reasonable one. So the question is, is it reasonable for the claimant to refuse to return to work because he refuses to use this splint? Dr. Hutchinson, who is the claimant psychologist who testified in this, put it best. He described the claimant's situation as if the claimant were to be sitting in a plane or a train and he was unable to leave that plane or train, it would trigger his agoraphobia and he'd be unable to cope. The anxiety would grow too high. However, the claimant is very capable of taking car trips to travel because he's able to control the situation. He's able to get out of the car when he needs to. The claimant himself – What did Dr. Hutchinson say? I'm sorry, I just said – Dr. Hutchinson, what did he ever say? That was his characterization of how this – He said that the claimant, probably not, he would be able to use a finger brace or to wear it long enough to be able to value him. He finds that the claimant's anxiety disorder was very significant, hard to treat, and his work injury caused him to become anxious and more depressed. He finds that returning to work in some way would decrease the claimant's anxiety. So he didn't say that this guy would have trouble if he had to use the finger brace? I believe the quote that I was referring to kind of was an overall description of what his condition is. My understanding of Dr. Hutchinson's testimony is yes, he would be capable of using the finger brace. He was encouraged to use the finger brace. And the claimant himself, when explaining to his doctors in March of 2015, stated himself, according to the records, the death defendant states the orthosis we have built to simulate fusion of the index joint helped a lot with the symptoms. Interestingly, although his anxiety disorder does not allow him to have the extremity casted or otherwise immobilized, the splint, which he can take off when he needs to, does not seem to create the same leveling of anxiety. So the claimant's own statements to his orthopedic surgeons mirror that of what Dr. Hutchinson is testifying to as well. He's okay as long as he can take the splint off when he needs to. When the anxiety gets to be too high, he can take it off. You're saying the injurious practice here is the failure to undergo surgery? No. Well, I don't want to waive that issue. I would make that contention, yes, is that it would be reasonable for him to have the surgery. But I understand, in these circumstances, it's a non-starter, Justice. I would say that the injurious practice is not utilizing the splint in attempting to go back to work. And this is an issue of reasonableness. And the arbitrator did not address whether or not it's reasonable for the claimant to refuse to put the splint on. The plaintiff respondent was authorizing the splint. He wanted him to do this. He was telling his doctors that this was a great help to him. The splint was used so greatly that he actually needed to order a second one because it had gotten so dirty. So this was an issue where he was using the splint. He was continuing to use it in his daily life. He never attempted to go back to work. And when it came time to go to trial, he was asked specifically, when you wear the splint, it's supposed to simulate effusion. Does it help at all? He answered, it does not. And he was followed up, it does not help you. His sentence was, it more or less gives me more anxiety and it still hurts. This is a lie. This is different from everything he was telling his treating orthopedic surgeon. And so the injurious practice is the 19D argument comes from the fact that it's not reasonable for him to do this. To do what? To go to trial requesting vocational rehabilitation and maintenance benefits because he refuses to use the splint and lies about his previous experience with it to the arbitrator. So the injurious practice is the refusal to wear the splint. That's correct, Your Honor. For what period of time? While he's working, during the work day. So what's the evidence there in terms of how often he's not wearing the splint? And the evidence that is taking the splint off is because of some reason other than the psychological condition that he has been diagnosed with and which is unrebutted. Your Honor, I don't think that that issue ever came up. Isn't that the burden in terms of establishing an injurious practice here? If you're saying that he's not wearing the splint and that it's not for psychological reasons, where's the proof that he was not wearing the splint for reasons other than the psychological condition that he was diagnosed with? Where is the proof that he was not wearing the splint? His own testimony. Not that he was not wearing the splint, but not wearing the splint because of his agoraphobia. You're saying that he was not wearing the splint for reasons other than the agoraphobia. Right. Where's the evidence of that? I think it's on March 12, 2015. On March 12, 2015, he describes a situation where he is wearing the splint and he's using it in his daily life and it helps him greatly and it does not create the same level of anxiety, is what he told his doctors. And then at trial, he states that it does give him more anxiety and he refuses to wear it for that reason. So our position is he's lying. He actually can wear the splint. He should be wearing the splint and it's unreasonable for him not to do so. So that would be a summation of my position. You'll have time to respond. Justice, I greatly appreciate it. Very quickly to conclude, I would ask that this Court demand the case back to the arbitrator and reverse the Commission's decision. Thank you very much. Counsel, you may respond. Thank you. May it please the Court. Good morning. My name is Steve Ames. I am the attorney for the defendant appellee in this matter, which is Brad Wildermuth. I would like to take up just where Counsel left off on this issue of whether or not the splint could be worn while one was working and thereby avoid all these pernicious effects of the finger injury. I think the most important point is that the respondent never offered any light duty to the petitioner with use of the splint. And in fact, instead of doing so, what the respondent did was fire the petitioner. That's one point. And I think it's critical because there is some back and forth here with the Court about whether or not there's any evidence to support this idea that refusing to use the splint is somehow causing an unreasonable refusal on the part of the petitioner to avail himself of treatment. And there would have been development, perhaps, if he would have been allowed to try to use the splint in his job or if it had been offered to him and that sort of thing. So I think that sort of pushes aside the whole argument. But on the merits of the argument, the first thing to keep in mind is that the purpose of the fusion was to remove intractable pain. Intractable pain. And that's in the record at page 611. Dr. Cobb recommended a fusion of the right empty joint to resolve intractable pain. And when he didn't have the fusion, intractable pain was not resolved. The use of a splint, there's not evidence in the record that the use of the splint would resolve the intractable pain while he was making use of the splint. In fact, the point of the splint was to see if he would have any of these adverse anxiety symptoms while wearing the splint trying to do activities. But there's never been any talk that the splint would in some way reduce the serious pain that was going on. And this brings us to the issue of the FCE. The court has already asked the question to the Respondents' Council whether or not if there was no FCE in this case, there would be any restrictions upon the return to work of this petitioner. And essentially, there isn't any basis for not including the FCE here. Dr. Cobb himself, who was the treating physician who did the first surgery, which was a synovectomy trying to reduce scar tissue in the finger joint, and then he recommended the fusion. He is the one who, upon finding that Dr. Hutchison was saying this gentleman cannot have a fusion, he's the one who ordered the FCE, and he's the one who said that the FCE was valid. He said that Dr. Cobb, who is the treating physician for the petitioner... I wouldn't call it a failure in the sense that he was attempting to remove scar tissue and did so successfully, but it was not successful in the sense of removing all the pain that he was having. So we're not left with functionality. In other words, there's functionality but pain with functionality. That's right. So fusion is designed to eradicate pain, but you lose functionality. Correct. Is that right? That is correct. Okay. In fact, with the fusion, Dr. Cobb commented that this would actually reduce his range of motion. He would not be able to, of course, bend the finger any further after that, at that point. I would just bring up the obvious point about the standard of review, which is a manifest weight. I don't think counsel's argued that that's not the standard. And here there's ample evidence to suggest that on all the issues... Well, let me rephrase that. I get the sense that counsel has pretty much acquiesced most of the issues that he raised in his brief, which is that he pretty much argued that the petitioner admitted he was capable of performing his job duties. He sort of dropped that, didn't pursue that. His treating doctor did not confirm. He said that his treating doctor confirmed the petitioner could do more of his restrictions provided for when equipped with a splint. Again, I didn't hear any argument about that. And I think that that's key because the idea that he could have done more because he had a splint on is not substantiated in the record. To say that it doesn't say what his restrictions would be with the splint may be true, but also we don't know what his capabilities are with the splint. That's not something opined to either, and that's something that counsel has not argued. I could go through all the points that he made during his brief that he is pretty much pushing to the side. I think he's sort of focusing at this point on this issue of the splint and his refusal to work with it. And I think I've argued extensively here that, A, he never had an opportunity to work with it. Respondent wouldn't give it to him. And, secondly, that there is no evidence that the splint could have reduced his intractable pain and solved that problem. So this leaves us with the last issue, which counsel talks about, Section 19D. I've touched on it a little bit already, but the idea that the respondent – I think well argued that the only place for him to go is to say that using the splint on the job is a refusal of medical treatment. But, again, as I've argued, the use of the splint is not something which he's had the opportunity to try on the job because of respondent. And, secondly, the issue of pain would not have been dealt with. And there is no development in the record by counsel for the respondent on this issue of how the use of the splint on the job might make a difference in his ability to work. So that's all I have, and I ask you to affirm the decision. Thank you, counsel. Counsel, you may reply. Justice, I'll be very quick. I'd like to first address the fact that I hope it's not understood that I have made a blanket waiver of every other issue that I've discussed in my brief because I didn't touch on it today. I have not. I'd like to still assert those before the court. Counsel also mentioned that there is no evidence in the record – Can you be specific what you did waive if you think you waived something? I'm sorry, Justice, can you say that again? Can you be specific about what you did waive if you waived something? I think it would be safer for me to say I would – like a blanket retainer of all the issues that I've put before the court in my brief. So you're retracting what might be construed as a waiver earlier? Yes. Oh, okay. Yes. Your Honors, I'd like to touch on Dr. Cobb's testimony. Counsel mentioned that there's no evidence in the record that there would be a change or there's no evidence that there would be a relaxation of the restrictions by his treating surgeon if he were to wear the splint. And there is on page 263 of the record. Dr. Cobb very specifically says that if he were to wear the splint, it would decrease his functional limitations and increase his functional capabilities. That's in his testimony. That's his answer. And very quickly, the issue about pain, Your Honors, I don't want us to confuse the concept of functional limitations and pain. There are about at this point, you know, 35,000 claimants a year now filing that state they're having some sort of pain, and that doesn't all mean that they cannot go back to work in some form or fashion. Having pain at the end of a workday is different from not being able to perform your job. This is a case where permanent partial disability should be addressed and determined, and it should be, because it wasn't, it should be the job of the commission. And there is no reason that this claimant, well, with the use of the splint, could go back to work in some form or fashion. He does not need vocational rehabilitation to do so. He could return to work full duty. Justices, I appreciate your time today, and I thank you very much. Thank you, counsel, both for your arguments in this matter. This case will be taken under advisement and a written disposition will be issued. Thank you.